# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 15, 2013

## STATE OF TENNESSEE v. MARK DUNLAP

**Appeal from the Circuit Court for Sevier County**
**Nos. 16705, 17000     Richard Vance, Judge**

---

**No. E2013-00586-CCA-R3-CD - Filed December 17, 2013**

---

The Defendant-Appellant, Mark Dunlap, appeals from the Sevier County Circuit Court's order revoking his community corrections sentence. The Defendant previously entered guilty pleas to kidnapping, aggravated assault, attempted aggravated burglary, and vandalism. Pursuant to the plea agreement, the trial court sentenced the Defendant to an effective sentence of six years, which was suspended to time served with the balance of his sentence to be served in the community corrections program. On appeal, the Defendant argues that the trial court erred in ordering the Defendant to serve his sentences in confinement after revoking his community corrections and erred in imposing consecutive sentencing. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

P. Richard Talley, for the Defendant-Appellant, Mark Dunlap.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; James Dunn, District Attorney General; and Ashley D. McDermott, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On March 20, 2012, the Defendant entered a best-interest plea to charges of kidnapping and aggravated assault in case number 16705 and attempted burglary and vandalism in case number 17000. Per the plea agreement, the trial court sentenced the Defendant, a Range I, standard offender, to six-year terms for kidnapping and aggravated assault, four years for attempted aggravated burglary, and eleven months and twenty-nine

days for vandalism. The sentences were ordered to be served concurrently and were suspended to time served, with the remainder to be served in the community corrections program. In addition, the trial court ordered the Defendant to pay restitution and court costs, to complete an alcohol and drug assessment, and to not contact the victims of the offenses.

At the plea hearing on March 20, 2012, the trial court explained the implications of a community corrections sentence to the Defendant, stating:

> While in the community corrections program you actually earn credits on your sentence but if you should violate community corrections you could be resentenced and could receive up to the maximum sentence. The two cases could potentially be stacked. You know, it's a risk. But as long as you comply with all the conditions everything is fine. You must undergo an alcohol and drug assessment and follow all recommendations.

The Defendant signed a community corrections behavioral contract, which imposed a number of conditions, including that he refrain from using intoxicants of any kind, report to his community corrections officer as directed, refrain from criminal behavior, and submit to a drug and alcohol assessment.

On June 25, 2012, the trial court issued a violation of community corrections warrant against the Defendant. The warrant alleged that the Defendant failed to comply with the conditions of community corrections by attempting to falsify a drug screen, failing to complete the court ordered alcohol and drug assessment, failing to make any payments on court costs, and having an arrest warrant issued against the Defendant for assault.

At the February 6, 2013 revocation hearing, Officer Scott Burns, the Defendant's community corrections officer, testified that the Defendant reported well for the first three months of the program after his release from jail. During one of his drug screens, however, the Defendant brought in a bottle of urine in an attempt to falsify the test. Officer Burns testified that he noticed the Defendant "was doing more than taking a drug screen" and began to question the Defendant about it. The Defendant then accidently dropped the bottle down his pants and spilled it on the floor. Officer Burns stated that it was "pretty clear" what the Defendant was attempting to do, and that the Defendant admitted to drinking alcohol and told Officer Burns "he was scared he was going to fail a drug screen." Officer Burns also testified that soon after the drug screen incident, the Defendant had a warrant issued against him for an assault charge after which the Defendant failed to report to his office as required. The Defendant was arrested on the violation of community corrections warrant approximately two months later.

Paul Cummins, the alleged victim in the assault charge, testified that the Defendant came to his home with David Ford at approximately 1:30 a.m. on June 19, 2012, to look for Angela Johnson. Mr. Cummins stated that the Defendant "just walked in the house" and looked in Mr. Cummins's bedroom and closet, "looking like where a person could hide." He stated that he "could smell alcohol on [the Defendant]" and that as the Defendant was leaving, the Defendant punched Mr. Cummins in the face. On cross-examination, Mr. Cummins conceded that he had two of the Defendant's guitars and that he told the Defendant to take the guitars while the Defendant was at Mr. Cummins's home that night. He explained that he had planned to fix the guitars for the Defendant but never got around to it. Mr. Cummins contacted police about the incident and signed a warrant that was issued against the Defendant. He attended the first court date but missed the second court date due to illness. The warrant was dismissed due to Mr. Cummins's absence.

The Defendant also testified at the revocation hearing. He admitted that he drank alcohol while released on community corrections but maintained that he did not know that he was prohibited from drinking alcohol. The Defendant acknowledged signing the alternative sentencing behavioral contract, but stated that no one read the form to him and he did not know it prohibited him from drinking alcohol. He explained that he urinated in a bottle in the bathroom of a restaurant where he had been drinking before the alcohol had "time to get into [his] system" after several friends told him that he would fail his drug screen. He stated that he did not plan to use the bottle of urine at the drug screen, but he conceded that he took it with him and concealed it in his pants. The Defendant told Officer Burns he had been drinking the night before and feared failing his drug screen.

With respect to the assault allegation, the Defendant testified that Mr. Cummins invited the Defendant over to his house on the evening of the assault to retrieve some items that had been stolen from the Defendant while he was incarcerated. He stated that he took David Ford with him that evening as a witness. The Defendant testified that as he and Mr. Ford were loading items into the Defendant's car, Mr. Cummins punched the Defendant. He admitted that he hit Mr. Cummins back, but stated that it was in self-defense and that he and Mr. Ford fled in his car. The Defendant testified that he continued to report to the probation office until the assault incident occurred. After the assault incident, he no longer reported, but he stayed in touch with his probation officer and called him every "eight to ten days." He stated that he was aware that a warrant had been issued for his arrest, but that he did not turn himself in because he was "working with [his] attorney to try to figure out the best way to handle it."

Following the hearing, the trial court concluded that the Defendant violated the conditions of community corrections by drinking alcohol, attempting to falsify a drug screen, engaging in assaulting behavior, and failing to report to the probation office. In revoking the

Defendant's community corrections sentence and imposing a new sentence, the trial court stated the following:

> The first consideration is the length of sentence within the range. [The Defendant] has an extensive criminal record, numerous, numerous, misdemeanors, some violent offenses, assaults, [a] prior aggravated assault conviction. Based upon his criminal record as an aggravating factor, and I find no mitigating factors, he should be sentenced to the maximum sentence within each case.
>
> . . . .
>
> Next, the Court has to consider . . . alternative sentencing. And again, looking at [the Defendant]'s record and history, he has had numerous instances where he has had release into the community for probation, six previous violations of probation, a violation of probation in this case. The Court feels that any further consideration of alternative sentencing would be futile. The same is true for probation. Because of his criminal history, numerous convictions and numerous probation violations, numerous failures to successfully complete release into the community, and to avoid depreciating the seriousness of these offenses, which are really serious underlying offenses, the underlying charges, the Court denies probation. It's not warranted at all.
>
> Now we come back to the important issue of how these sentences should run. . . . The Court believes that consecutive sentences is warranted because of his history of violent behavior, because of the threats to others in the community as demonstrated by his behavior, that he is a violent offender. The Court is going to run the two charges in number 16705, aggravated assault and kidnapping[,] concurrently, a six[-]year sentence on each. But number 17000, [aggravated burglary], four years, consecutive. The [vandalism] misdemeanor, eleven/twenty-nine, concurrent. So a net ten-year sentence. The Court feels that the aggregate reasonably reflects the seriousness of these offenses and is warranted under all the circumstances given his criminal history, his failure to comply with other conditions of release in the community and the danger that he represents to others in the community.

The trial court entered a final judgment and order to this effect. It is from this order that the Defendant now appeals.

## ANALYSIS

-4-

On appeal, the Defendant argues that the trial court erred by ordering him to serve his sentence in confinement and by imposing consecutive sentences for an effective ten-year sentence. The State responds that the trial court acted well within its discretion in ordering the Defendant to serve his sentences in confinement and properly imposed consecutive sentences. Upon review, we agree with the State.

The Tennessee Supreme Court has held that the same principles that apply in the revocation of probation also apply in the revocation of community corrections. State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). The revocation of community corrections, like the revocation of probation, rests within the sound discretion of the trial court. Id. A trial court may revoke either alternative sentence upon a finding by a preponderance of the evidence that the defendant violated the conditions of the sentence. See T.C.A. §§ 40-35-310, -311(e) (2009). An appellate court will uphold a trial court's decision to revoke probation or community corrections absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005); State v. Webb, 130 S.W.3d 799, 842 (Tenn. Crim. App. 2003) (quoting Harkins, 811 S.W.2d at 82).

"[A] trial court has the authority, upon revocation of a community corrections sentence, to resentence the defendant to a period of incarceration up to the maximum for the offense." State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001) (citing State v. Griffith, 787 S.W.2d 340, 341 (Tenn. 1990)); see also T.C.A. § 40-36-106(e)(4). The Tennessee Supreme Court has stated that before imposing a new sentence, however, "the trial court must conduct a sentencing hearing in accordance with the principles of the Criminal Sentencing Reform Act." Samuels, 44 S.W.2d at 494. This Court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012. This abuse of discretion standard of review also applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Here, the Defendant acknowledges that there was sufficient evidence for the trial court to find that he violated the conditions of his community corrections sentence. The evidence presented at the revocation hearing establishes, and the Defendant concedes, that the Defendant drank alcohol, attempted to falsify a drug screen by bringing in a bottle of urine, was charged with assault, and failed to report to the probation office for approximately two months. Therefore, the trial court was authorized to revoke the Defendant's community corrections sentence. See T.C.A. § 40-36-106(e)(4) (2009). The Defendant's argument

instead focuses on the length and manner of service imposed by the trial court after properly revoking the Defendant's community corrections sentence.

The Defendant first argues that the trial court abused its discretion by failing to consider alternative sentencing options and the sentencing principles under Tennessee Code Annotated section 40-35-103. Our review of the transcript from the revocation hearing reveals that the trial court did consider alternative sentencing and the principles of the Sentencing Act. After determining the proper length of the sentence, the court stated, "[n]ext, the court has to consider, just as [it] would in any sentencing hearing, . . . any alternative sentencing." The court concluded that alternative sentencing was "not warranted at all," reasoning that confinement was appropriate given the Defendant's criminal history, prior probation violations, and the need to avoid depreciating the seriousness of the underlying offenses. See T.C.A. § 40-35-103. Accordingly, the Defendant is not entitled to relief.

The Defendant next asserts that the trial court abused its discretion in ordering the Defendant to serve his sentences consecutively for an effective ten-year sentence. The Defendant argues that the trial court erred by imposing consecutive sentencing because it did not properly find any "aggravating circumstances" as set out in Tennessee Code Annotated section 40-35-115(b) and based its determination solely upon the court's conclusion that the Defendant is a "violent offender," which is insufficient to support the imposition of consecutive sentencing. Based on our review of the record, we disagree with this characterization of the court's reasoning and find no abuse of discretion in the trial court's conclusion.

The Criminal Sentencing Reform Act grants trial courts the discretion to impose consecutive sentencing where the defendant is convicted of more than one offense. T.C.A. § 40-35-115(a) (2006). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in section 40-35-115(b) (2006).[1] "The existence of any one of the seven

---

[1] Tennessee Code Annotated section 40-35-115(b) provides:
The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
(1) The defendant is a professional criminal who knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record if criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the

(continued...)

criteria in Tennessee Code Annotated section 40-35-115(b) is sufficient to justify consecutive sentencing." State v. Vincent Clifton, No. W2012-01651-CCA-R3-CD, 2013 WL 22997130, at *10 (Tenn. Crim. App. May 21, 2013) (citing T.C.A. § 40-35-115(b); State v. Alder, 71 S.W.3d. 299, 307 (Tenn. Crim. App. 2001)); see also, State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) ("Extensive criminal history alone will support consecutive sentencing.") (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994)). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1) (2006). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2) (2006).

Based on the record before us, it is clear that the trial court considered the Defendant's criminal history in determining whether to impose consecutive sentencing. Throughout the hearing, the court referenced the Defendant's extensive criminal history multiple times. The court specifically applied the Defendant's criminal history as an aggravating factor when determining the proper length of the sentence and found it probative when determining whether alternative sentencing was appropriate. When turning to the question of consecutive sentencing, the court referenced the Defendant's "history of violent behavior" and stated that he "is a violent offender." The court further reasoned, however, that consecutive sentencing was warranted because "the aggregate [ten-year term] reasonably reflects the seriousness of these offenses and is warranted under all the circumstances given *[the Defendant's] criminal history*, his failure to comply with other conditions of release in the community and danger that he represents to others in the community." The record supports the trial court's conclusion that the Defendant's criminal history is extensive; therefore, regardless of the court's additional factual findings, the trial court's use of the Defendant's criminal history as a basis to impose consecutive sentencing is both proper and alone sufficient to justify

[1](...continued)
defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation;
(7) The defendant is sentenced for criminal contempt.

consecutive sentencing.[2]  See Adams, 973 S.W.2d at 23.  Accordingly, the trial court did not abuse its discretion, and the Defendant is not entitled to relief.

## CONCLUSION

Upon review, the judgment of the trial court is affirmed.


_____
CAMILLE R. McMULLEN, JUDGE

---

[2] The Defendant does not directly contest the trial court's finding that his criminal history is extensive; however, he asserts in a footnote in his brief that his criminal history is "not as extensive as it appears," noting that many of the charges included in the presentence report were dismissed by the State. We disagree.  Our review of the record, notwithstanding the numerous dismissed charges, shows that the Defendant's criminal history ranges back nearly two decades and includes, inter alia, at least five probation violations and convictions for drug possession, assault, and aggravated assault.  While the Defendant attempts to explain the circumstances of the previous probation violations in his brief to this court, none of this information was presented at the instant revocation hearing before the trial court.